## A. F. DUNBAR & CO. v. JOHN S. HUGHES.

Where A. entrusts funds to B. to pay over to C. the latter has not the right, in case B. misapplies the funds, of proceeding against him under the 10th section of the act of March, 24th 1840, abolishing imprisonment for debt. That right exists in A. alone.

Where an agent receives money with instructions to pay it over to a third person, upon his neglecting to do so the third person may maintain an action against him for money had and received for his use.

It is a settled rule of the law of mandate, that if the instrument confirming the mandate be not expressed in plain and unequivocal terms, free from ambiguity, but is susceptible of different interpretations, and the agent is thereby misled, the principal will be bound and the agent exonerated.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. C. W. *Hornor*, for plaintiff. E. L. *Goold*, for defendant. The judgment of the court was pronounced by

ROST, J. The plaintiffs allege that the defendant has collected, and fradulently withholds from them, funds placed in his hands for their benefit by their debtor, *Asa D. Gove*. They pray that he be arrested and held to bail, under a section of the act of 1840, abolishing imprisonment for debt, and that he be adjudged to pay them the amount of their claim against *Gove*.

The defendant pleaded the general issue; and further averred that he never was instructed by *Gove* to pay over to the plaintiffs the funds in his hands, but simply directed to use his discretion in the disposal of those funds, and that he was justified by his instructions in paying them over to *R. F. Nichols & Co.*, which he alleges he did. He also claimed damages in reconvention.

The district judge being of opinion that *Gove* alone could proceed against the defendant under the act of 1840, gave judgment in his favor, and dismissed the claim in reconvention. The plaintiffs have appealed.

We concur in the opinion of the district judge, that the provision in the act of 1840, under which the defendant was arrested and held to bail, cannot be invoked by the plaintiffs in the present action; but as the allegations and prayer of the petition are sufficient to maintain an action for money had and received to the plaintiffs' use, it is necessary to pass upon the evidence adduced in support of them.

The record shows that *R. F. Nichols & Co.*, *Asa D. Gove* and *John S. Hughes*, each for one third, had formed a company to trade in fruits in the Mediterranean, and that Hughes kept the books of that company. At the date of the transaction which has given rise to this controversy, the company had suffered losses, and *Gove* was indebted to it and to the other partners individually.

*Gove* was then under acceptance to the plaintiffs of, what is called in the record, the "*Baker* draft" for $1500, which was about to mature. Having no means at hand to meet that draft, he left for Cincinnati, where it appears he had friends, after having appointed the defendant his general and special attorney in fact by a notarial act. Soon after, he sent to the defendant, from Cincinnati, three acceptances for $500 each, with instructions, upon which the plaintiff relies in support of his claim. The letter of instruction is as follows: "Enclosed, you have *Amos Gove's* draft on *Sturges* and *Wright*, for $500, say five hundred dollars, 30 days date, to pay a part (due 3d September,) of *Baker's* draft for $1500. My

brother is making arrangements, and probably will to-morrow send you two other bills of $500 each, having some little time to run, that I must leave with you to act, as in your judgment may be for the interest of all concerned, to negotiate and pay or not pay the draft. I have not the face to ask you or *Hewson* to advance the cash, unless you have satisfactory security; of this you must judge and act accordingly."

DUNBAR
*v.*
HUGHES.

According to the plaintiffs, the meaning of these instructions is, that the acceptances sent or their proceeds, if discounted, were to be applied to the payment of the *Baker* draft, and that the only discretion left the defendant, was to discount those acceptances and take up the draft at maturity, or wait till the acceptances matured and then pay the plaintiffs.

The defendant insists, that the discretion left to him was to determine whether, in the interest of all concerned, the remittance was to be applied to the payment of the *Baker* draft, or of other debts of *Asa D. Gove*; and that in the honest exercise of that discretion, he applied it to the payment of other acknowledged debts of *Gove*.

It is shown by the testimony of *Gove*, that the remittance was intended to pay the *Baker* draft; and it may be conceded, that the instructions given fairly conveyed that meaning. But it cannot be denied that they are couched in ambiguous language, and susceptible of the interpretation which the defendant put upon them. Under those circumstances, it is not necessary for us to determine which of the two interpretations should have controlled the other, it being a settled rule of the law of mandate, that if the instrument is not expressed in plain and unequivocal terms, free from ambiguity, but the language is fairly susceptible of different interpretations, and the agent, in fact, is misled and adopts and follows one when the principal intended the other, there, the principal will be bound, and the agent will be exonerated. Story on Agency, par. 74. There being nothing in the record to show bad faith on the part of the defendant, *Gove* is bound under that rule by the application which his agent made of the fund to the payment of other debts; and no stipulation *pour autrui* ever existed of which the plaintiffs can take advantage.

It may further be stated, that there is evidence in the record showing that *Gove* on his return appeared satisfied, and made no objection to the application made of the bond by *Hughes*.

The judgment is therefore affirmed, with costs.